CHEHARDY, Judge.
Plaintiffs, husband and wife, instituted this suit for personal injuries and medical expenses sustained by the wife in an automobile accident on the West Bank Expressway, near its intersection with Farrington Avenue in Marrero, Louisiana. Named defendants were the driver of the other vehicle involved and his automobile liability insurer. Defendants each answered in the form of a general denial and filed reconven-tional demands — the insurer, as subrogee for the sum of $550 property damage paid their insured, and the insured for his $50 deductible. Following trial, judgment was rendered in favor of defendants on the main demand dismissing plaintiffs’ suit, and in favor of defendants in the reconventional demand in the sums of $550 and $50, respectively. Plaintiffs have appealed.
The facts of the accident are in dispute. Plaintiffs’ version is as follows:
On March 12, 1977 at approximately 5:45 a.m., the wife was driving her car on Far-rington Avenue service road, near its intersection with the expressway on her way to an early morning appointment at the beauty parlor. She stopped at the stop sign on the service road and crossed the eastbound lanes of the expressway where she stopped at a yield sign in the neutral ground. She looked to her right toward the Harvey Tunnel and saw the headlights of defendant’s vehicle just emerging from the tunnel two to three blocks away, which gave her plenty of time to make a left turn onto the expressway.
*453 She turned into the left lane closest to the neutral ground on the expressway, shifted into all three gears (the car has manual transmission) and was 200 to 300 feet down the road when her vehicle was struck suddenly and violently from the rear, knocking it into the right hand lane 400 feet from the point of impact. The trunk lid flew up, the vehicle stalled, her stomach hit the steering wheel, her wig flew off and her neck snapped. Both car doors were jammed so she had to crawl out of a window. She testified that at that time she saw defendant back up his car into the intersection (200 to 300 feet), where it remained until the police arrived. She complains of injuries to her head, stomach, neck and abdomen, and emotional illness as a result of the accident.
Defendants’ version of the accident is that their driver was on his way to work, where he had to report at 6:45 a.m. He was travelling westward on the expressway toward the Huey Long Bridge. The weather was drizzling. When he was about three car lengths from the intersection of Far-rington Avenue he saw plaintiff vehicle start to make a left hand turn onto the expressway. He blinked his lights, blew his horn and hit the brakes. He could not turn to the right because another car was travel-ling in that lane, and he could turn left onto the neutral ground only to a limited extent, because he would have hit a power line. The accident occurred two or three feet from the intersection when his vehicle struck plaintiff vehicle in the rear.
There were no other witnesses to the accident, but the investigating police officer observed broken glass and debris at the spot where defendant vehicle was located in the intersection at the time he arrived. He found the debris particularly behind the defendant’s left rear wheel. This evidence supported to his satisfaction that the accident had occurred in the intersection.
Appellants’ numerous assignments of error are basically related to their contention that the trial court erred in failing to find that the proximate cause of the accident was the negligence of defendant driver, that the trial court was influenced by unproved allegations that plaintiff was under the influence of alcohol and/or drugs at the time of the accident and that, alternatively, defendant had the last clear chance to avoid the accident.
It is clear the trial court accepted defendants’ version of the accident according to its reasons for judgment, and it was influenced in this decision by concluding the accident occurred in the intersection because of the location of the debris. The judge was also impressed with testimony that plaintiff appeared to be intoxicated or drugged and was dozing or groggy while in the back seat of the police ear. This conclusion was also based on a medical report from the state hospital in Mandeville in which plaintiff admitted to excessive use of drugs two weeks prior to her admission to that institution on April 1, 1980. According to plaintiff’s statement to Dr. S.A. Holt of that hospital she was experiencing some sort of drug problem at the time of the accident.
Plaintiffs infer that defendant’s driving ability was impaired because he had taken three different drugs shortly before the accident. The medication taken by defendant was necessary because he suffers from high blood pressure. He has taken it daily for several years as prescribed by his doctor, and there is no suggestion of a drug problem, drug abuse, or that these prescription drugs interfered with his ability to drive a car.
The trial court did not address itself to the question of last clear chance. We can find no evidence that it was either pleaded or argued in the trial court. However from its reasons for judgment it is clear that in accepting defendants’ version of the accident last clear chance would be inapplicable.
Our appellate review of facts in civil cases is aptly set forth by our Supreme Court in the case of Canter v. Koehring Company, 283 So.2d 716, 724 (La.1973) (and cases cited therein), wherein it is stated:
“When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasona *454 ble factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.”
and further clarified by that court in the case of Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1979), wherein they explained the manifest error rule as follows:
“ * * * ‘Manifestly- erroneous,’ in its simplest terms, means ‘clearly wrong.’ We said, then, that the appellate court should not disturb such a finding of fact unless it is clearly wrong. Therefore, the appellate review of facts is not completed by reading so much of the record as will reveal a reasonable factual basis for the finding in the trial court; there must be a further determination that the record establishes that the finding is not clearly wrong (manifestly erroneous).”
Following the guidelines set for us by the Supreme Court in the two landmark cases cited above, we find no manifest error in the finding of facts by the trial court in the instant case.
For the reasons assigned the judgment of the trial court is affirmed.
AFFIRMED.